IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

TRUSTEES OF THE HEATING, PIPING
AND REFRIGERATION PENSION FUND,
*et al.*,
     Plaintiffs,

v.

ENGINEERING CONTRACTORS, INC., *et al.*,
     Defendants.

Civil Action Nos. 10-cv-01439-AW;
                 10-cv-01444-AW; and
                 10-cv-02014-AW

**<u>Memorandum Opinion</u>**

Currently pending before the Court are Plaintiffs' motion to compel discovery, Doc. No. 30 Ex. 9,[1] and Plaintiffs' motion for partial summary judgment, Doc. No. 38. Because the parties seem to have reached an impasse in the discovery process, the Court has referred this case to a Magistrate Judge for the resolution of all discovery disputes. Thus, at this juncture the Court will consider only Plaintiffs' motion for partial summary judgment. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, the Court GRANTS Plaintiffs' motion for partial summary judgment.

## I.    FACTUAL & PROCEDURAL BACKGROUND

---

[1] The citations herein refer to Case No. 10-cv-1439-AW, although the parties filed identical motions in 10-cv-01444-AW and 10-cv-02014-AW.

The Plaintiffs in this case are Trustees of various employee benefit funds governed by the Employee Retirement Income Security Act of 1974, as amended. This action was commenced by Plaintiffs in order to recover delinquent contributions, liquidated damages, interest, attorneys' fees and costs allegedly owed by Defendants Engineering Contractors, Inc. ("Engineering Contractors") and ECI of Washington LLC ("ECI") pursuant to Sections 502(g) and 515 of ERISA. 29 U.S.C. §§ 1132(g) and 1145.

Although discovery is not yet complete in this case, Plaintiffs move for partial summary judgment to establish that Defendant ECI is the alter ego of Defendant Engineering Contractors. *See* Doc. No. 38 Ex. 1 at 1. Specifically, Plaintiffs contend that Engineering Contractors, which ended its operations in early May 2010, continues to operate as ECI. In support of its motion, Plaintiffs present facts culled from Defendants' websites and Interrogatory Answers. First, Plaintiffs note that when Engineering Contractors ended its operations in May 2010, its former employees began working for ECI. Doc. No. 38 Ex. 2 at 13, Ex. 15, Ex. 21. Steven Griffith, who was the President and 51% owner of Engineering Contractors, is now the President and 51% owner of ECI. Similarly, Paul Parker was the Vice President and 49% owner Engineering Contractors and is now the Vice President and 49% owner of ECI. Doc. No. 38 Exs. 3, 4. Griffith and Parker's former responsibilities at Engineering Contractors mirror their present responsibilities at ECI. *Id.*

Defendants' websites and Interrogatory Answers demonstrate that the companies have a common business purpose and operated in the same geographic area. Doc. No. 38 Exs. 4-7. The companies share a common name and stylized "ECI" logo. Doc. No. 38 Exs. 6, 8. They also share employees, Doc. No. 38 Ex. 3 at 69-73, e-mail addresses, Doc. No. 38 Exs. 6, 9, identical

2

banking operations, Doc. No. 38 Ex. 3 at 88, and identical computer software, Doc. No. 38 Ex. 2 at 37, 55. Defendants' representatives also testified that Defendants share common equipment such as trucks, tools, office computers and printers. Doc. No. 38 Exs. 2, 3. Defendants contend that Plaintiff relies impermissibly on affidavits that are not made with personal knowledge, rely extensively on hearsay, and fail to establish that the declarants are competent to testify as to matters contained within the affidavits. *See* Doc. No. 43 at 5. However, Defendants do not deny the accuracy of the information gleaned through Defendants' websites and Interrogatory Answers.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the

evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.   ANALYSIS

Plaintiffs argue that ECI is liable as an alter ego for all amounts due to Plaintiffs under the collective bargaining agreement with Engineering Contractors. The alter ego doctrine was developed to "prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making a mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership or management." *Maryland Elec. Indus. Health Fund v. Kodiak Util. Constr.*, 289 F. Supp. 2d 698, 701-02 (D. Md. 2003) (quoting *Mass. Carpenters Ctr. Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307 (1st cir. 1998) (internal quotations omitted)).

Courts impose alter ego status based on a variety of factors, including "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus." *Id.* (citations omitted). At its basis, a court must decide whether a successor corporation is "really the predecessor corporation by another name." *Id.* (quoting *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576 (6th Cir. 1986). The Fourth Circuit has articulated a two-part test for determining alter ego status, based on: (1) "whether substantially the same entity controls both the old and new employer;" and (2) whether the transfer resulted in an expected or reasonably foreseeable benefit to the old

employer related to the elimination of its labor obligations." *Alkire v. NLRB*, 716, F.2d 1014, 1020 (4th Cir. 1983).

Defendants' contend that the mere fact that ECI and Engineering Contractors have similar names is insufficient to find ECI an alter ego, and that the Court cannot rely on certain affidavits proffered by Plaintiffs which constitute heresy and suffer from other deficiencies. Doc. No. 43 at 5. Defendants' contentions ignore the weight of undisputed evidence presented by its own Interrogatory Answers demonstrating that substantially the same entity controls Engineering Contractors and ECI in both form and substance. In terms of form, Steven Griffith has controlled both Engineering Contractors and ECI, as president and 51% owner of both companies. In terms of substance, Griffith controlled the "post-bidding" operations of Engineering Contractors and presently controls the "post-bidding" operations of ECI. Similarly, Paul Parker was the Vice-President of Engineering Contractors and owned 49% of the company and is now the Vice-President of ECI and owns 49% of the company. Parker managed the bidding, financial accounts and payroll operations for both companies.

The circumstances surrounding the transfer of operations from Engineering Contractors to ECI present many of the factors courts have found persuasive in supporting a finding of alter ego status, such as the sharing of equipment and employees between the past and present companies. *See Kodiak Electric*, 289 F. Supp. at 703. The evidence establishes that Griffith continued to control operations despite the nominal change from Engineering Contractors to ECI. The first step of the *Alkire* test is therefore met.

Regarding the second step, the "expected or reasonably foreseeable benefit" test, this Court has found that continuity of ownership "suggests that the ability of the owners of the first

company to evade that company's debts by switching to a second company financially benefits them." *Id.* There is no dispute here as to continuity of ownership. Engineering Contractors and ECI were owned and controlled by the same people, Griffith and Parker. By going out of business as Engineering Contractors and renaming itself ECI, Parker and Griffith were able to evade obligations under the union contract. Even if the Court ignores the affidavits presented by Plaintiffs, Engineering Contractors' own Deposition states that it went out of business due to "major cost overruns from the union employees." Doc. No. 38 Ex. 2 at 18. Plaintiffs have failed to come forward with any "specific facts" refuting this point and showing that there is a "genuine issue for trial." Fed. R. Civ. P. 56(e); *Bouchat v. Baltimore Ravens Football Club*, 346 F.3d 514, 525 (4th Cir. 2003). Because the undisputed facts demonstrate that Engineering Contractors continues to operate as ECI, the Court finds that ECI is the alter ego of Engineering Contractors and is thus jointly liable to Plaintiffs for all amounts allegedly owed under the collective bargaining agreement.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is GRANTED. A separate order will follow.

| | |
|---|---|
|   October 4, 2011   |   /s/   |
| Date | Alexander Williams, Jr. |
| | United States District Judge |