IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE HEATING, PIPING & REFRIGERATION PENSION FUND, MEDICAL FUND, TRAINING FUND, INDUSTRY PROMOTION FUND, COMMUNICATIONS AND PRODUCTIVITY FUND, STEAMFITTERS LOCAL 602 RETIREMENT SAVINGS FUND, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>ENGINEERING CONTRACTORS, INC., *et al.*,<br><br>Defendants. | Civil Action No. 10-cv-01444-AW |

**MEMORANDUM OPINION**

Plaintiffs, trustees of various employee benefit funds governed by the Employee Retirement Income Security Act of 1974 (ERISA), have moved for summary judgment to recover delinquent contributions and associated damages from Defendant employers, as well as an order for appropriate equitable relief. Doc. No. 54. The Court has reviewed Plaintiffs' Motion and accompanying exhibits and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons articulated below, the Court will GRANT Plaintiffs' Motion for Summary Judgment.

I.  **BACKGROUND**

Plaintiffs in this action include the Trustees of the Heating, Piping, and Refrigeration Pension Fund, Medical Fund, Training Fund, Industry Promotion Fund, Communications and Productivity Fund, and Retirement Savings Fund, as well as the Trustees of the International

Training Fund (collectively, the "Benefit Fund Plaintiffs"). The Benefit Fund Plaintiffs are employee benefit plans organized under the provisions of ERISA, and are financed by contributions made by employers under the terms of collective bargaining agreements with Plaintiff Steamfitters Local Union No. 602 (hereinafter the "Union"), an unincorporated labor organization.

From December 2008 through July 31, 2010, Defendant Engineering Contractors, Inc. was bound to a Collective Bargaining Agreement with the Plaintiff Union through an Agreement of Assent. Doc. No. 54-5, Savia Aff. ¶¶ 9; Doc. No. 54-7 at 60, 62. Although the original CBA expired July 31, 2010, Defendant agreed to remain bound to its terms unless it provided notice of termination to the Plaintiff Union 150 days prior to that date. Doc. No. 54-7 at 60. Defendant provided no such notice of termination prior to the deadline, nor at any time since. Doc. No. 54-5 ¶ 10. Accordingly, Engineering Contractors, Inc. remains bound to the terms and obligations of the current Collective Bargaining Agreement (hereinafter, the "CBA") between the Mechanical Contractors Association of Metropolitan Washington and the Plaintiff Union, an agreement which expires on July 31, 2013. Doc. No. 54-5 ¶ 11; Doc. No. 54-8. The Court previously determined that Defendant ECI of Washington LLC is the alter ego of Engineering Contractors, Inc., which ceased operations in May 2010. Doc. Nos. 44–45. The same result was affirmed by the National Labor Relations Board after a full evidentiary hearing. *See* Doc. No. 54-13. Accordingly, the labor obligations of Engineering Contractors are carried over to Defendant ECI, and ECI is bound to the terms and conditions contained in the current CBA. *See, e.g.*, *Alkire v. N.L.R.B.*, 716 F.2d 1014, 1018 (4th Cir. 1983); *Trs. of Nat'l Automatic Sprinkler Ind. Pension Fund v. Budget Plumbing Corp.*, 111 F. Supp. 2d 716, 719–20 (D. Md. 2001).

The CBA requires, among other things, that contributions must be made to the Benefit Fund Plaintiffs for each hour of work performed by Defendants' employees. Doc. No. 54-5 ¶ 14; Doc. No. 54-8 at 90. The number of hours worked by each employee under the CBA is supplied to the Funds by employers on a self-reporting basis in monthly reports called Contribution Reports. Doc. No. 54-5 ¶ 16. The total number of hours reported on the Contribution Reports is multiplied by the applicable hourly contribution rates in the CBA, resulting in the total amount owed by the employer to the Plaintiff Benefit Funds for each month. *Id.*

In their Motion for Summary Judgment, the Benefit Funds assert that under ERISA and the terms of the CBA, they are entitled to damages on delinquent contributions, as well as related liquidated damages, interest, and attorney's fees and costs. Plaintiffs also ask for an order requiring Defendants to obtain the bond required under the CBA and relevant Trust Agreements, and an order compelling Defendants to submit monthly Contribution Reports. Defendants did not file a response to Plaintiffs' Motion. The matter is now ripe for the Court's consideration.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.[1]

### III. ANALYSIS

Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act (MPPAA), "provide specific remedies for the enforcement of federal pension laws and the collective bargaining and trust agreements executed pursuant to these laws." *Trustees of Glaziers Local 963 v. Walker & Laberge Co.*, 619 F. Supp. 1402, 1403 (D. Md. 1985). Section 1145 requires employers to make contributions according to the terms of such agreements:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 1132(g)(2) provides that where a plan prevails in enforcing section 1145, it shall be awarded damages in the amount of unpaid contributions, as well as interest, liquidated damages, and attorneys' fees.[2]

---

[1] Where a party does not file an opposition to a motion for summary judgment, the court must "view the facts in the light most favorable to [the nonmoving party] and evaluate those facts in light of well established law." *Nukuna v. Supervalu Retail Cos.*, No. JKS-10-3600, 2011 WL 3047654, at *2 (D. Md. July 22, 2011).

[2] The relevant text of section 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court **shall** award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

Federal common law governs the interpretation and enforcement of ERISA-regulated agreements and collective bargaining agreements. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989); *Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957); *see also United McGill Corp. v. Stinnett*, 154 F.3d 168, 171–72 (4th Cir. 1998) (interpretation of ERISA-regulated plans); *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62 (4th Cir. 1989) (interpretation of collective bargaining agreements). Courts should interpret ERISA-regulated pension plans "under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995). Similarly, in interpreting the terms of a collective bargaining agreement, courts must "begin by looking at the language of the agreement for any clear manifestation of the parties' intent." *Quesenberry v. Volvo Trucks N. Am. Retiree Healthcare Benefit Plan*, 651 F.3d 437, 440 (4th Cir. 2011) (quoting *Keffer*, 872 F.2d at 62).

1. Contributions

Defendants do not dispute that contributions are owed to the Plaintiff Benefit Funds for the period from November 2009 through December 2011. From November 2009 to March 2010, Defendants submitted unfunded Contribution Reports showing that they owed contributions in the amount of $93,046.85. *See* Doc. No. 54-9 at 126. Defendants ultimately paid these contributions, but the payments were late. Doc. No. 54-5 ¶17.[3]

Since March 2010, Defendants have failed to supply monthly Contribution Reports in accordance with their contractual obligations. *See* Doc. No. 54-5 ¶ 19. Under the Agreement of

---

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added).

[3] Accordingly, Plaintiffs are entitled to liquidated damages, interest, and attorneys' fees and costs based on this amount of delinquent contributions.

Assent, the Defendants are bound to all provisions in the Plaintiff Benefit Funds' Trust Agreements. Doc. No. 54-7 at 60. The Trust Agreements all contain a "Projection of Delinquency" Provision, which permits the Plaintiff Funds to calculate the average amount of contributions owed by the employer and assume that the employer would be obligated to pay those same amounts in in the future. Specifically, this provision provides:

> Where an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has failed to submit the regular documents showing the Employees who worked for him and the hours worked, the Trustees may project as the amount of the delinquency the greater of the average of the monthly hours reported by the Employer for the last three (3) months for which payments were made and/or unfunded remittance reports received, *or the average of the monthly hours reported by the Employer for the last twelve (12) months for which payments were made and/or unfunded remittance reports received*.

*See, e.g.*, Doc. No. 54-5 at 15 (emphasis added). Pursuant to this provision, and based on the average amount of contributions by Defendants for the twelve months prior to April 2010, there is no genuine issue of material fact that Defendants owe $505,195.95 in projected delinquent contributions for the 21 months from April 2010 through December 2011. *See* Doc. No. 54-9 at 124.[4]

    2.    <u>Liquidated Damages</u>

There is also no dispute of material fact that Plaintiffs are entitled to an award of liquidated damages based on Defendants' late and unpaid contributions. As discussed above, liquidated damages are assessed at the amount stated in the plan, but not to exceed twenty percent. 29 U.S.C. § 1132(g)(2)(C)(ii). For the purposes of this Motion, Plaintiffs calculate liquidated damages at the 15% rate contained in the CBA. Doc. No. 54-8 at 97. Accordingly,

---

[4] Plaintiffs also calculated, in the alternative, the amount of contributions owed based on payroll records supplied by Defendants in discovery. However, Defendants do not challenge Plaintiffs' methodology of calculating the projections under the relevant Trust Agreements, and the Court concludes that a judgment based on that methodology is proper under the plain terms of the governing agreements.

the Court concludes that Plaintiffs are entitled to liquidated damages of $13,179.51 for the period November 2009 through March 2010, and $75,779.39 for the period from April 2010 through December 2011. *See* Doc. No. 54-9 at 125–26.

    3.       Interest

Interest on late or unpaid contributions shall be determined by using the rate provided by the Funds' governing documents, if such rate is provided. 29 U.S.C. § 1132(g)(2). The amount of interest authorized by the relevant Trust Agreements and CBA is 10%. *See, e.g.*, Doc. No. 54-5 at 14; Doc. No. 54-8 at 97. Accordingly, there is no genuine issue of material fact that the amount of interest owed by Defendants on the delinquent contributions totals $7,191.26 from November 2009 through March 2010, and $100,643.40 from April 2010 through December 2011. *See* Doc. No. 54-9 at 125–26.

    4.       Attorneys' Fees and Costs

As discussed, a prevailing party is entitled to recover reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Recovery is also provided for in this case by the CBA, relevant Trust Agreements, and the Agreement of Assent. *See, e.g.*, Doc. No. 54-5 at 14; Doc. No. 54-8 at 97; Doc. No. 54-7 at 60. Counsel for Plaintiffs has billed 122 hours in pursuing this action against Defendants. Doc. No. 54-10, Hopp Aff. ¶ 2. The Court concludes that this is reasonable given the work required in this case, which included drafting the Complaint, motions practice, and extensive discovery. *Id.* The Court also concludes that the $200 and $225 hourly rate charged by counsel and $120 hourly paralegal rate are reasonable given the attorney's and paralegal's extensive experience and the Court's guidelines. *Id.* ¶¶ 1–2; App'x B to Local Rules, Rule 3 (D. Md. 2011). Plaintiffs have also incurred reasonable costs in the amount of $510.00.

Accordingly, there is no genuine issue of material fact that Plaintiffs are entitled to attorneys' fees and costs in the amount of $24,628.75.  Doc. No. 54-10 ¶¶ 5–7, at 140.

        5.        <u>Fringe Benefit Bond</u>

ERISA Section 502 authorizes the Court to grant additional equitable relief as it deems appropriate.  29 U.S.C. § 1132(g)(2)(E).  The relevant Trust Agreements and CBA provide that each employer shall obtain a fringe benefits payment bond as determined by the Trustees or their Collection Committee.  *See, e.g.*, Doc. No. 54-5 at 15; Doc. No. 54-8 at 96.  The governing documents in this matter provided for bonds in various amounts to protect Plaintiffs from non-payment, so as a result, the Benefit Fund Plaintiffs adopted a Contributing Employer Bond Policy.  Doc. No. 54-9 at 129.  The Bond Policy provides that the bond obligation shall be in the amount of three times the average monthly contributions owed by the employer for the previous twelve months, plus twenty percent.  *Id.*  Pursuant to this provision, the Plaintiffs seek a single bond in the amount of $87,473.38 jointly naming all Plaintiffs as obligees.  *See id.* at 124.  The Court concludes that the requested relief is proper and authorized under the plain terms of the governing agreements, and will therefore order Defendants to obtain bond coverage within 60 days.

        6.        <u>Injunctive Relief Compelling Production of Monthly Contribution Reports</u>

It is not disputed by Defendants that since January 1, 2012, they have failed to submit Contribution Reports in accordance with their contractual obligations.  *See, e.g.*, Doc. No. 54-5 at 12; 54-8 at 96–97.  Plaintiffs seek an order requiring Defendants to provide Contribution Reports and supporting payroll documentation from January 1, 2012 through the last pay period in March 2013, and an order that Contribution Reports be submitted in a timely fashion for the duration of the CBA (through July 31, 2013).  Defendants filed no opposition to Plaintiffs'

Motion, and the Court concludes that such equitable relief is appropriate in the instant case. The Plaintiff Benefit Funds will continue to suffer irreparable harm without the information contained in the Contribution Reports. The Court's order will be limited to requiring Defendants to comply with their statutory obligations under ERISA and their contractual obligations under the CBA and relevant Trust Agreements. Accordingly, the Court will grant Plaintiffs the requested injunctive relief.

## IV.   CONCLUSION

For the foregoing reasons, the Court will GRANT Plaintiffs' Motion for Summary Judgment. The Court will enter judgment in favor of Plaintiffs in the amount of $614,408.85 against Defendants jointly and severally.[5] The Court will also order Defendants to obtain bond coverage naming Plaintiffs as obligees in a penalty amount no less than $87,473.38, and that such bond shall be maintained through the duration of the CBA. The Court will further order Defendants to provide to Plaintiffs Contribution Reports and supporting payroll documentation for the period from January 1, 2012 through March 2013, and that pursuant to the CBA, the Defendants shall timely provide to Plaintiffs Contribution Reports for the duration of the CBA. A separate Order will follow.

|   April 9, 2013   | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |

---

[5] Plaintiffs have not sought damages on any delinquent contributions later than December 2011 because Defendants have not produced any payroll records for this period. Accordingly, this judgment will be without prejudice to Plaintiffs' ability to file a new lawsuit to collect on any amounts owed on delinquent contributions later than December 2011.